[File No. 7077]

EMELIE MUHLHAUSER, Mathilda Muhlhauser, Bertha Ellwein, Henry Gappert, August Gappert, Fritz Gappert, Theodore Gappert, Raymond Gappert, Charlotte Gappert, Augusta Borner, Emelie Holle Wolf, Henry C. Holle, Abner Larson, Special Guardian of Raymond Gappert and Charlotte Gappert, Minors, and F. C. McCagherty, as administrator of the estate of Frederick William Gappert, also known as Fritz W. Gappert, deceased, Appellants, v. SELMA BECKER, George Gappert and P. S. Jungers, Respondents.

(37 NW2d 352)

Opinion filed December 27, 1948. Rehearing denied March 23, 1949.

*Sullivan, Fleck, Kelsch & Lord; Milton K. Higgins, Floyd B. Sperry,* for appellants.

*Murray & Murray,* for respondents.

HUTCHINSON, District J. One Fritz Gappert, a resident of Morton County, died March 11, 1938, intestate, leaving real and personal property. The above named plaintiff, Augusta Borner, is the sister of the decedent, Fritz Gappert. On April 5, 1938, she filed a petition in the county court of Morton County for letters of administration. Since that date there has been continuous litigation. Several appeals have been heretofore made to this court.

Borner et al. v. Larson et al., 70 ND 313, 293 NW 836;
Muhlhauser et al. v. Becker et al., 74 ND 103, 20 NW2d 353;
Muhlhauser et al. v. Becker et al., 74 ND 35, 20 NW2d 363;
Muhlhauser et al. v. Becker et al., 74 ND 90, 20 NW2d 364.

A reference to these cases will disclose the history of the litigation.

. In the petition for letters of administration filed by Augusta Borner it was alleged that the above named Selma Gappert Becker and George Gappert (who were named as respondents in the petition) "claim to be the adopted children of the decedent; that your petitioner has no information relative to such adoption and denies that they are the legally adopted children and heirs at law of the decedent." Selma Gappert Becker and George Gappert filed an answer and cross petition "Wherein they set forth that they are the adopted children of the decedent, 'and consequently had and have the prior right of selecting an administrator;' ". The county court granted the petition of Augusta Borner and letters of administration were issued to

F. C. McCagherty, the person nominated by her in the petition. Selma Gappert Becker and George Gappert appealed to the district court. The matter was tried in the district court pursuant to such appeal, and the district court held that Selma Gappert Becker and George Gappert were the adopted children of the decedent and consequently had the prior right in selecting an administrator. The plaintiffs appealed to this court from the decision of the district court. This court reversed the decision of the district court and held that the evidence did not establish that Selma Gappert Becker and George Gappert were the adopted children of the decedent and that the district court was in error in so holding and that consequently Selma Gappert Becker and George Gappert were "not entitled to administration" and were "not entitled to nominate an adminis-. trator." Borner v. Larson, 70 ND 313, 293 NW 836.

In February 1941 Selma Gappert Becker and George Gappert filed a petition in the county court that the letters of administration formerly issued to F. C. McCagherty be revoked. The petition came on for hearing on July 23, 1941, but apparently the hearing was continued (74 ND 92, 20 NW2d 365), in any event no order was made. The evidence discloses that the parties to this litigation conferred on several occasions without the presence of their attorneys for the purpose of trying to settle all matters in difference and to agree upon some equitable division of the property left by Fritz Gappert, deceased. In August 1941 terms of settlement were finally agreed upon, and all the parties went to the office of R. F. Gallagher, the then State's Attorney of Morton County, who had no connection with the litigation and had represented none of the parties, and engaged him to reduce their agreement to writing. Thereupon, Mr. Gallagher did prepare a written agreement. The agreement was not executed by any of the parties but each of the parties was given a copy. Later it was discovered that in the agreement drawn by Mr. Gallagher errors had been made in the names of the parties and that also there had been omitted from the agreement a clause which had been agreed upon providing for the payment out of the personal property of the Gappert Estate of the sum of $250 to Selma Gappert Becker and

$250 to George Gappert to apply upon expenses and attorneys' fees incurred by them in the past litigation.

Nothing further was done to complete the settlement until in April 1942, when a further conference was held without the presence of attorneys, and the parties thereafter met in the offices of Sullivan, Fleck and Higgins, who were the attorneys for the legal heirs of the deceased, and without the presence of J. K. Murray, attorney for Selma Gappert Becker and George Gappert, and there requested the preparation of a written compromise agreement to be executed by all the parties. On April 17, 1942, the following agreement was executed by all the parties:

### "AGREEMENT

"This Agreement made and entered into this 17th day of April, 1942, by and between Emilie Muhlhauser, Matilda Muhlhauser, Bertha Ellwein, Henry Gappert, August Gappert, Fritz Gappert, Theodore Gappert, Raymond Gappert, Charlotte Gappert, Augustina Borner, Emelie Wolf, Henry C. Holle, heirs at law of Fritz Gappert, also known as Frederick Gappert, hereinafter called the first parties, and Selma Becker and George Gappert, hereinafter called the second parties.

"Whereas, Fritz Gappert, also known as Frederick Gappert, late of New Salem, Morton County, North Dakota, died intestate leaving an estate consisting of real and personal property,

"And whereas, the probate of said estate is now pending in the county court of Morton County, North Dakota, and F. C. McCagherty of New Salem, North Dakota is the administrator of said estate,

"And whereas, the parties of the second part have made claim to a share and interest in said estate by reason of their claim that they were adopted as the children of said decedent,

"And whereas, such claim by the said parties of the second part has led to disputes and litigation between the parties of the first part and the said parties of the second part,

"And whereas, the parties hereto are desirous of composing, adjusting, compromising and settling finally such disputes and litigation,

"In consideration of the premises and the sum of $1.00 paid

by the said second parties to the said first parties, the receipt of which is hereby acknowledged, the parties hereto have agreed as follows:

"(1) Out of the moneys in the hands of the administrator, after the expense of administration and costs and expenses of the said first parties, incurred in said litigation in the county, district and supreme count, have been fully paid, and the sum of $250.00 to each of said second parties for their attorneys fees and expenses, the administrator of said estate shall pay to the said second parties one-fourth of all the moneys remaining in his hands.

"(2) The administrator shall deliver to the said George Gappert, one of the second parties herein, the deeds executed by the said decedent, as grantor, to the said George Gappert, now in the possession of said administrator, to the lands therein described, as well as the deed by said Grantor to Gordon, Richard and Clayton Gappert.

"And said administrator shall deliver to the said Selma Becker, one of the parties of the second part herein, the deed or deeds now in said administrator's possession, wherein the said decedent granted and conveyed to the said Selma Becker certain lands therein described.

"(3) It is further agreed that the county court of Morton County, North Dakota, is hereby authorized to distribute in the decree of distribution to the said Selma Becker and George Gappert the lands described in the deeds hereinbefore referred to, as provided in said deeds.

"(4) In consideration of the foregoing agreements of the first parties, the second parties hereby agree to dismiss with prejudice all legal actions or proceedings brought by them in regard to the probate of said estate including all objections to the administrator's final report and account which are now pending in County Court, and District Court of Morton County, or either of them, or in the Supreme Court, and they hereby release and relinquish all claims which they have heretofore made to a share and interest in said estate as adopted children of said decedent, or on any other account.

"(5) It is further agreed by the parties hereto that upon the

execution of this agreement, all disputes and controversies herein shall be considered settled, and that the final report and account of the administrator be allowed as submitted, and that upon the payment of the amounts herein provided for, including the attorney fees and expenses of the attorneys for the first parties, that said estate be closed, and that the final decree of distribution entered by the court herein be made in conformity with this agreement.

"In Witness Whereof, the parties to the foregoing agreement have hereunto set their hands the day and year first above written.

| | |
|---|---|
| Henry C. Holle | Fred Gappert |
| Henry Gappert | Emilie Wolf |
| Theodore Gappert | Raymond Gappert |
| Augusta Borner | Charlotte Gappert |
| Emilie Muhlhauser | Guardian Wm. Waechter |
| Bertha Ellwein | Parties of the First Part. |
| Mathilde Muhlhauser | Geo. Gappert |
| August Gappert | Selma Becker |
| Parties of the First Part. | Parties of the Second Part. |

"Signed and delivered in the presence of

. . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . .

Witnesses."

Thereafter the administrator filed a supplemental account and on April 22, 1942, the county court entered an order allowing the final report of the administrator. On April 23, 1942, the county court made a final decree of distribution distributing the estate in accordance with the provisions of the written agreement of the parties. On May 4, 1942, the county court made an ex parte order that such final decree be "cancelled and annulled," stating that "it was procured by fraud and misrepresentation and this court committed error in issuing the same." On the same day the county court made an ex parte order revoking the allowance of the final account of the administrator, McCagherty. On May 7, 1942, the county court made an ex parte order removing Mc-

Cagherty as administrator and appointing P. S. Jungers as administrator. (74 ND 92, 20 NW2d 364). Thereafter, the defendants, Selma Gappert Becker and George Gappert, attempted to rescind the compromise agreement by giving notice of rescission to the plaintiff's attorneys.

On July 8, 1942, the county court issued a citation to Jungers and to the plaintiffs requiring them to show cause on July 27, 1942, why Jungers should not file a final account and why the estate should not be distributed to the defendants. On August 7, 1942, Jungers filed his "final account" and a "Final Report and Accounting and Petition for Distribution." The plaintiffs filed an answer and return wherein they objected to the jurisdiction of the county court to hear and consider and decide the matters set for hearing. The county court overruled plaintiffs' objection and made an order that the final account of Jungers as administrator of the estate be approved and allowed. (74 ND 92–95, 20 NW2d 364). The plaintiffs appealed from the decision of the county court. While the appeal was pending the defendants, Selma Gappert Becker and George Gappert, on February 3, 1943, petitioned the county court to rehear its order of April 22, 1942, and the county court issued a citation setting said matter for hearing. The matter finally came on for hearing on June 7, 1943, and the county court again ordered that the order made on April 22, 1942, allowing the final account be annulled. On May 22, 1944, the district court held that at the time Jungers made his reputed "final account" he "was not in a position to file a final report and account" and reversed the order allowing the final report and account of Jungers as administrator. This matter was brought before this court on appeal and this court held that the orders removing McCagherty and appointing Jungers were invalid and affirmed the judgment of the district court insofar as it held that Jungers' report should be annulled and set aside in its entirety. Muhlhauser, et al. v. Becker, et al., 74 ND 90, 20 NW2d 364. See, also, Muhlhauser, et al. v. Becker, et al., 74 ND 35, 20 NW2d 363.

When the matter of the settlement of the estate came on for hearing before the county court the defendants Selma Gappert Becker and George Gappert claimed that they were entitled to

have distributed to them all the estate of Fritz Gappert pursuant to a contract which said Fritz Gappert had made to adopt the said Selma Gappert Becker and George Gappert. The plaintiffs here objected to the jurisdiction of the county court to hear and to determine the question of the existence of such contract to adopt. The objections were overruled and the county court heard the matter and decreed that such contract had been made and had been fully executed and that consequently all the property of the said estate should be distributed to said defendants, Selma Gappert Becker and George Gappert. (74 ND at pp 106–107, 20 NW2d at p 355.) The plaintiffs appealed to the district court. In that court they contended that the county court was without jurisdiction to decide the questions as to the existence and validity of a contract to adopt and that consequently its decision and its order of distribution were nullities. The district court held that the county court had jurisdiction to determine whether the contract to adopt had been made and whether it had been executed and it further held that pursuant to such contract the said defendants were entitled to have distributed to them the whole of the estate of said Fritz Gappert. The plaintiffs thereupon appealed to this court and this court held that the county court was without jurisdiction to determine any question as to the existence and validity of a contract to adopt or whether such contract had been made or executed. Muhlhauser et al. v. Becker et al. 74 ND 103, 20 NW2d 353. In the opinion in the case this court said:

"The county court has no jurisdiction to determine the validity of or rights under a contract made for the benefit of a third person. The county court has the right to say who are named in the will as heirs or legatees and what share the will provides. If a third party claims an assignment of said legacy or an assignment of an interest in the real estate, that matter is determined by another court. The county court has the right to say what share the widow or the children will get in the estate of an intestate under the laws of succession; but where one asserts a claim against the estate and it is disallowed by the county court, the rights thereunder are determined by another court.

"The jurisdiction to determine whether a contract to adopt

children was made, the extent and terms of such contract and whether it was executed by the one agreeing to adopt, is in a court of equity.

". . . 'the jurisdiction of the probate court does not extend to the determination of the rights in property left by a deceased, where such right does not depend upon heirship or will but on contract. . . .

"The district court was in error in holding the county court has jurisdiction to determine the issues raised under the claim of this contract to adopt; in proceeding to determine the issue on appeal from the county court over the objection to jurisdiction interposed by the appellants; and in affirming the decision of the county court. Under the findings it is clear the judgment of the lower court must be reversed. The district court will enter decree setting aside the decree of distribution made by the county court."

After the decision of this court had become final the plaintiffs instituted this action to enforce the compromise agreement. The defendants interposed an answer and a counterclaim. In their answer they alleged that they were the owners of all the property in controversy. In their counterclaim they alleged that the deceased, Fritz Gappert, had made a contract to adopt the defendants and that such contract had been fully performed by them. They further allege that prior to his death, Fritz Gappert gave and transferred all the properties to the defendants. It is further alleged that the compromise agreement was procured by fraud; also that the county court of Morton County in proceedings had in the estate of said Fritz Gappert adjudged said compromise agreement to be void and of no force and effect because the same had been procured by fraud. The plaintiffs interposed a reply denying all the allegations of the counterclaim. The action was tried to the court without a jury and resulted in a decision in favor of the defendants on their counterclaim. Plaintiffs have appealed from the judgment and demand a trial anew in this court.

In the briefs and on the oral argument in this court defendants' counsel contended that this court is precluded from review-

ing the evidence or considering any question in the case except such as might arise upon the judgment roll proper because:

1. The plaintiffs had "failed to procure a settled statement of the case" within six months after the service of notice of entry of judgment, and

2. The plaintiffs failed to specify in the statement of the case either that they desire a retrial of the entire case or of certain designated questions of fact as provided by Rev Code ND 1943, § 28–2732.

█ There is no merit in the first contention. The trial court is not deprived of jurisdiction of proceedings for settlement of a statement of the case because an appeal has been taken (4 CJS p 1093; Northern Bag Co. v. Dakota Plaster Co. 42 SD 281, 173 NW 726; Aultman-Taylor Machine Co. v. Clausen, 18 ND 483, 121 NW 64), or because the time prescribed by the statute has expired. The court is authorized to extend the time within which a statement of case may be settled, Rev Code ND 1943, § 28–1806. Applications for extension of time for settlement of a statement of case are not jurisdictional and orders extending time of settlement may be made ex parte. Johnson v. Northern P. R. Co. 1 ND 354, 48 NW 227; Bucholz et al. v. Harthun, 61 ND 547, 239 NW 161. And where a statement of case is settled after the time limited without an extension of time having been granted the order of settlement itself operates to extend the time for settlement. Johnson v. Northern P. R. Co. (ND) supra. The proceedings had at the time the statement was settled have not been embodied in the statement of the case. The judge's certificate of the statement recites that the matter came on for hearing at a specified time and place and that the plaintiffs and the defendants appeared by their counsel; that the attorney for the defendants made a special appearance and objected to the jurisdiction of the court and that it appeared to the court that due notice had been given and that the court had jurisdiction of the matter before it. The record also contains an affidavit and application for extension of time for settlement of the statement of the case verified by one of the attorneys for the plaintiffs which is attached to and transmitted with the certificate of the trial court settling the statement of the case.

The plaintiffs admitted that they had failed to specify in the statement of the case a demand for a retrial of the entire case or of certain specified questions of fact, but that such specification was attached to and served with the notice of appeal; and plaintiffs' counsel moved that the record be remanded to the trial court to enable the plaintiffs to make application to have the statement of case amended by having such specification embodied in and settled as a part of the statement of the case. Such motion was supported by affidavit of plaintiffs' counsel which in the judgment of this court warranted that the motion be granted. Accordingly the motion was granted. The failure to embody such specification in the statement of case is not jurisdictional and in a proper case the record may be remanded so that the statement of case may be amended and the specification demanding a trial anew in this court embodied in the statement of case. State Bank of Maxbass v. Hileman, 31 ND 417, 154 NW 532. In accordance with the rule set forth in the case last cited, the record in this case was remanded to the district court with permission to the plaintiffs to apply to the trial court to have the statement of case amended and resettled and have the specification or demand for retrial embodied in the statement of case. After remand, proceedings were had in district court pursuant to notice and hearing at which both plaintiffs and defendants appeared by their counsel. The trial court granted the motion to amend the statement of case and accordingly the statement of case was amended and the demand for trial anew of the entire case embodied in the statement of case and the record thereupon returned to this court. No attack has been made in this court upon the action of the trial court on the proceedings after remand and indeed the record discloses that the trial court was wholly justified in the action which it took. Statutes permitting extensions of time for settlement of statement of case or for settlement after the time has expired or for amendment of the statement of case where there are material omissions are remedial in their nature and should be liberally construed to the end that an appeal may be determined on its merits. Smith v. Hoff, 20 ND 419, 127 NW 1047.

The evidence discloses that the estate of decedent consisted

of two farms, one small house in which the decedent had lived, and about $16,000 worth of personal property. At the time of the decedent's death one of these farms was being operated by Selma Becker and her family and the other by George Gappert and his family, and at all times since, these same parties have continued to operate the respective farms. It is also a fact that there was found after the death of Fritz Gappert, in his safe in the home he had occupied, a deed executed by Fritz Gappert, wherein Selma Becker was grantee, describing the farm then being operated by Selma Becker and family, and there was also found in the same safe deeds executed by said decedent wherein George Gappert and his three sons were grantees, describing the farm operated by George Gappert and family. There was no evidence that these deeds had ever been delivered. There is no doubt that all parties who executed the compromise agreement knew that these deeds were referred to in the compromise agreement. The agreement that was prepared by Mr. Gallagher at the request of all the parties when they met at his office was received in evidence upon the trial and the agreement which was eventually prepared and executed by the parties on April 17, 1942, is almost a duplicate of the one prepared by Mr. Gallagher except for the correction of certain names and the inclusion of the clause for payment to Selma Gappert Becker and George Gappert of $250 each to apply on their costs and expenses.

 ██ ██ The trial court held that the compromise agreement was not supported by any valid consideration. This holding was erroneous. Crilly et al. v. Morris et al. 70 SD 153, 15 NW2d 742. Since April, 1938, there had been continuous litigation between the legal heirs of Fritz Gappert and Selma Becker and George Gappert as to who was entitled to the Fritz Gappert estate. At the time of the execution of the compromise agreement there were a number of different angles of the controversy pending before the courts. What the ultimate outcome would be, no one could foretell. All parties knew that this litigation was expensive. Already four years had elapsed since the death of Fritz Gappert and none of the parties to this action had received anything from the estate. It was clearly a compromise of doubt-

ful rights. There was nothing unusual about these parties coming together to settle their lawsuits. The cause of action and subject matter of the litigation are always under the exclusive control of the client. Hauser et al. v. Security Credit Co. 66 ND 399, 266 NW 104; Simon v. Chicago, Milwaukee & St. Paul R. Co. 45 ND 251, 177 NW 107.

The attorneys for the defendants have charged in their brief and by oral argument that the plaintiffs' attorneys practiced fraud and coercion in procuring the compromise agreement. There is no competent evidence to support the charge made by defendants' counsel. There is no evidence that any of the attorneys took part in the negotiations between the parties over the terms of settlement. It is true that before the compromise agreement was executed one of the defendants inquired whether such an agreement could be lawfully executed without the presence of the attorney for the defendants, and in response to such inquiry was told by one of the attorneys for the plaintiffs that the execution by the defendants was legal. There is no evidence that the plaintiffs' attorneys ever advised or urged the defendants to make or sign the agreement without legal advice. The inquiry made by the defendant was not so unusual. Many people are of the opinion that when a matter has proceeded to litigation it can be terminated only by an attorney. Paulson v. Lyson, 12 ND 354, 97 NW 533, 1 Ann Cas 245. It is also true that after the defendants' attempted rescission of the compromise agreement, the attorneys for the plaintiffs sought an interview with them without the presence of their attorney. This, however, was after the counsel for the defendants had filed a written accusation in the records of the county court charging said plaintiffs' counsel with fraud and coercion. The attorneys for the plaintiffs then had a personal interest in the charge and were anxious to know what basis of fact the defendants had or claimed for making such charge. It then became not only a lawsuit between clients but also a vindication of professional conduct. Viewed under these circumstances the conduct of plaintiffs' counsel is not to be censured. Nor can the court infer from such conduct either fraud or coercion.

The terms of the settlement were simple. Selma Becker

was to get the farm which she and her family had been operating. George Gappert and sons were to have the farm which they had been operating. It was doubtless in the minds of the plaintiffs that this would carry out the wishes of the deceased because of the fact that deeds had been found among the papers of the deceased. There were three sets of legal heirs. The settlement provided that after the payment of certain expenses the remainder of the property would be divided and one-fourth thereof would go to Selma Becker and George Gappert. There is nothing complicated in the compromise agreement. In fact, the defendants admit that they understood all its terms except they now claim that they thought Selma Becker and George Gappert would each receive one-fourth of the balance of the personal property. This claim seems very doubtful. The clause in the agreement is clear and it further appears that the same clause was contained in the agreement prepared by Mr. Gallagher, a copy of which was in the hands of the parties for a period of about six months. There is no evidence whatsoever of any misstatement of fact or any undue influence, coercion or intimidation. The evidence shows that the terms of the settlement were all agreed upon without the assistance of attorneys on either side. The parties all knew the important facts. They knew approximately what property was involved in the Fritz Gappert estate. They knew the claims of the parties. Their experience made them aware that litigation is uncertain. Their compromise was agreed upon without the assistance of any attorneys. The defendants have never claimed that the written agreement did not conform to the actual agreement except that the defendants now say that they thought each of the defendants was to receive one-fourth of the balance of the personal property. The defendants are mature. They had some months to think over the terms of settlement before its final consummation. The fact that the agreement was finally drawn and executed without the presence of the attorney for some of the parties does not in itself invalidate the agreement. This is a circumstance that might be considered where there is evidence of undue influence, intimidation, misrepresentation or coercion. Here there is no such evidence.

█ The defendants say that some one of the parties told the defendants that the attorney for the defendants was a crook. Had the defendants actually believed any such statement they had ample opportunity to consult other counsel. The trial court in his memorandum decision says: "Moreover, it was against their (Selma Becker's and George Gappert's) best interest for them to enter into the agreement." This is not a statement of fact. It is purely a matter of opinion relating to a matter on which there was and is room for individuals to reach different conclusions. It may have been an inadvisable settlement, or it may have been a most favorable one. Considering all the circumstances and known facts, the settlement does not seem unfair. But even if it were against the best interests of Selma Becker and George Gappert, that, in itself, would be no grounds for rescission unless the settlement is so unfair that it would be an unconscionable contract. The law favors compromises and does not scrutinize too closely the nature of the rights of the parties concerned. 21 Am Jur 381; 26 CJS 1110; Re Vasgaard's Estate, 62 SD 421, 253 NW 453; Anno 38 ALR 759.

It is not a question of what the court may think as to the advisability of the terms of the compromise. A controversy founded on good faith will support a compromise. 11 Am Jur 249, § 4, et seq. Whether the compromise agreement settles the issues as the court might have settled them is unimportant. Even while controversies are in litigation there is nothing to prevent parties from making a compromise settlement. The law discourages litigation and encourages settlement. Chaffee v. Chaffee, 197 Mich 133, 163 NW 879.

To enforce a compromise agreement an action in equity for specific performance is a proper remedy. 11 Am Jur 283, § 35; Engle v. Engle, et al. 209 Mich 275, 176 NW 547.

█ █ Courts will enforce family settlement agreements of estates when free from fraud and creditors are not involved regardless of whether the settlement follows the law of descent and distribution. A compromise agreement may be enforced in a court of equity in a suit for specific performance. Cole et al. v. Cole et al. 292 Ill 154, 126 NE 752, 38 ALR 719.

The defendants further contend that the agreement required action by the county judge and therefore it could not be specifically enforced. It is true that the parties did make certain provisions for the carrying out of the terms of their compromise. Such provisions are only incidental to the main elements of the agreement, which were a complete settlement of the controversy. This court has upheld an agreement which directed the distribution of an estate in the county court. Aberle v. Merkel, 70 ND 89, 291 NW 913. The defendants take the position that a compromise agreement cannot provide for a distribution of property which does not conform to the statutory laws of succession. The courts do not sustain this position. "A compromise or agreement for the settlement of the estate of an intestate when free from fraud and when no rights of creditors intervene is upheld and enforced by the courts even though the agreement provides for the distribution on a plan different from that prescribed by the statutes governing descent and distribution." 11 Am Jur 258–259, § 11.

The defendants contend that the compromise agreement is nothing but an unexecuted accord, and in support of this contention cite Lehde v. National Union Fire Ins. Co. 46 ND 162, 180 NW 56. This contention is untenable. Performance is not necessary to sustain a valid compromise agreement. Here the agreement was based upon a disputed claim. Generally an accord is based upon a liquidated claim.

It is also contended by the defendants that the county court of Morton County considered the compromise agreement and adjudged the same to be void and that this decision is conclusive of the validity of the compromise agreement and the rights of the parties under it. It is true the county court of Morton County in setting aside the order approving the final report and in vacating the decree of distribution that had been made in April 1942 purported to adjudge the compromise agreement to be invalid because of fraud. In attempting to pass upon and determine the validity of the compromise agreement the county court clearly acted without jurisdiction. The defendants are not heirs at law of the decedent nor do they claim under a

will. Their claim is based upon a contract. The plaintiffs are legal heirs at law. The county court had no more power to adjudicate concerning the validity of the compromise agreement than it had to adjudicate with respect to the existence of, and the rights under, the alleged contract for adoption. The county court is not a court of general equity jurisdiction. Section 111 of the State Constitution provides: "The county court shall have exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of accounts of executors, administrators and guardians, the sale of lands by executors, administrators and guardians, and such other probate jurisdiction as may be conferred by law . . . ." See also Section 27–0702 of North Dakota Revised Code. The county court was without authority to try or determine any question of fraud or coercion raised in connection with the compromise agreement. State ex rel. Nelson et al. v. Probate Court, 199 Minn 297, 271 NW 879. Juridiction could not be conferred by consent of parties. Whatever adjudication the county court made was a mere nullity. Finn et al. v. Walsh et al. 19 ND 61, 121 NW 766.

That the constitutional limitation of the county court necessarily excludes the power to determine questions such as the validity of the compromise agreement is the settled rule of our decisions, (Finn et al. v. Walsh et al. (ND) supra; Muhlhauser et al. v. Becker et al. 74 ND 103, 20 NW2d 353; Gjerstadengen v. Van Duzen Co. 7 ND 612, 76 NW 233, 66 Am St Rep 679), and the prevailing rule in other jurisdictions, where similar limitations exist. In 1 Woerner, Am. Law of Administration (3rd ed) § 151, pp 514, 515, the author says:—

"Since the functions of Probate courts are limited, in respect of executors and administrators, to the control of the devolution of property upon the death of its owner, it is not their province to adjudicate upon collateral questions. . . . It follows from this principle, that Probate courts have no power to investigate the validity of an assignment of the interest of an heir or legatee; the decree of distribution or payment should be to the legal successor of the property, leaving questions of disputed rights between these and claimants against them to be adjudicated in

the ordinary courts. And this is so of the assignments of creditors, of legatees, of distributees, of parties entitled to partition, of the assignment by a widow of her interest in the estate, and of a legacy charged upon another legacy."

The defendants have cited and discussed the following cases: Lindholm v. Nelson, 125 Kan 223, 264 P 50; Bettendorf v. Bettendorf, 190 Iowa 83, 179 NW 444, 945; Heinz v. Vawter, 221 Iowa 714, 266 NW 486. The factual situation in each of these cited cases is so different from the case at bar that it renders them of little value to this court. The courts are all agreed that fraud or fraudulent misrepresentations will vitiate a compromise agreement and especially where a fiduciary relationship exists, but fraud is never presumed but must be proved by clear and satisfactory evidence. Schinzer v. Wyman, 27 ND 489, 146 NW 898; McLennan v. Plummer, 34 ND 269, 158 NW 269.

The upholding of the compromise agreement is decisive of the case. The judgment is reversed and the district court is directed to render judgment adjudging that the compromise agreement is valid, and binding upon the parties thereto, and fixes the rights of such parties in the property covered by such agreement.

NUESSLE, Ch. J., BURKE and CHRISTIANSON, JJ., and GRIMSON, District J., concur.

BURR and MORRIS, JJ., did not participate.

On Petition for Rehearing.

HUTCHINSON, District Judge. The respondents have filed a petition for rehearing. By the petition the respondents allege that there are "decisive and controlling points of law and fact which counsel for respondents overlooked, which points if considered will cause the Court to affirm the decision of the lower court." The points are then separately stated and argued.

The petition in general argues questions of law and fact considered and determined by the former opinion. The respondents, however, have attempted to raise two questions which were not considered or decided in the former opinion. The reason why these two questions were not considered and decided is apparent; they were never raised by the respondents in the trial court or in this court on appeal. They are brought forward

for the first time in this petition for rehearing. These contentions are:

(1) That all heirs of the deceased did not sign the compromise agreement and are not parties to the action;

(2) That two of the signers of the compromise agreement were under the age of eighteen years and incapable of contracting.

It is well settled that such questions may not be raised for the first time on appeal but must be first raised in the trial court. It follows that in no event can they be raised for the first time on petition for rehearing. 4 CJS p 430; Ellison v. LaMoure, 30 ND 43–51–52, 151 NW 988; Harmon v. Haas, 61 ND 772, 785; 241 NW 70, 80 ALR 1131, 33 NCCA 52.

The respondents' contention that because certain heirs failed to sign the compromise agreement and have not been made parties to the action and therefore the lower court's decision should be affirmed, is not logical. If indispensable parties have been omitted, it would require a reversal of the judgment appealed from rather than an affirmance. The record in this case, however, shows that upon the trial the parties through their respective counsel stipulated as to who were the blood relations and, as such, heirs-at-law of the decedent, and such stipulation does not include the names of the parties which respondents now claim to be heirs-at-law of the decedent.

The contention of the respondents that two of the signers were under the age of eighteen years and therefore the judgment of this court would not be binding upon them, is also without merit. These two parties joined as plaintiffs in this action and were duly represented upon the trial. The judgment is not only binding upon them but upon all parties who submitted their rights for determination.

We see no reason for departing from what was said and held in the former opinion. Nothing is presented in the petition for rehearing justifying or requiring a rehearing.

The petition for rehearing is denied.

NUESSLE, Ch. J., BURKE and CHRISTIANSON, JJ., and GRIMSON, District J., concur.